## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

NATASHA JETCAY CORTEZ-GONZALEZ,

      Petitioner,

v.                                         No. 2:25-cv-00985-MLG-KK

KRISTI NOEM, in her official capacity as
Secretary of the Department of Homeland Security;
PAMELA BONDI, in her official capacity as U.S.
Attorney General; TODD LYONS, in his official
capacity as Acting Director and Senior Official
Performing the Duties of the Director of U.S.
Immigration and Customs Enforcement;
MARY DE ANDA-YBARRA, in her official
capacity as Field Office Director of the El Paso
Field Office of U.S. Immigration and Customs Enforcement,
Enforcement and Removal Operations; and
DORA CASTRO, in her official capacity
as Warden of Otero County Processing Center,

      Respondents.

## MEMORANDUM OPINION REGARDING
## <u>SECOND TEMPORARY RESTRAINING ORDER</u>

The issue presented in this matter is whether a noncitizen, who has been living in the United States, is entitled to a bond hearing after they have been detained and charged with removability. Like nearly every other court to address the issue, this Court resolves the question in the affirmative.

### FACTUAL BACKGROUND

Though technically a native Mexican citizen, Nathasha Jetcay Cortez-Gonzalez has resided continuously in this country since 2005. Doc. 1 at 6 ¶ 19-20. She arrived with her mother—who

1

had been trafficked into the United States—when she was just five months old.[1] *Id.* Given the circumstances precipitating her arrival, she did not receive admission or parole as an infant. *See* Doc. 2 at 8 ¶ 2.

Having lived in the United States for nearly her entire life, Cortez-Gonzalez has established deep roots. Her education and upbringing occurred entirely in this country, and she is engaged to an American citizen. *Id.* at 9 ¶ 11.

Although Cortez-Gonzalez has no criminal record, on July 10, 2025, she was arrested by Department of Homeland Security ("DHS") agents during "Operation at Large," which was conducted in Los Angeles, California. Doc. 2 at 8-9 ¶¶ 4, 11. She was served with a Notice to Appear ("NTA") and charged with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* at ¶ 5; *Doc.* 1 at 23-25 (NTA). Cortez-Gonzalez was subsequently transported from California—her state of residence—to the Otero County Processing Center in New Mexico. Doc. 1 at 1 ¶ 1, 4-5 ¶ 13.

On August 11, 2025, the presiding immigration judge ("IJ") denied Cortez-Gonzalez's request for a custody redetermination pursuant to 8 C.F.R. § 1236 because he "lack[ed] jurisdiction

---

[1] Cortez-Gonzalez's legal status depends—at least in the short term—on whether her mother's application for a T visa is successful. Cortez-Gonzalez's mother filed an application for a T visa (or, more formally, T nonimmigrant status), which provides protected status to victims of "a severe form of trafficking in persons." Doc. 2 at 12 (internal quotation marks omitted) (quoting 8 U.S.C. § 1101(a)(15)(T)); *id.* at 8 ¶ 3. Cortez-Gonzalez submitted an I-914A Application for Immediate Family Member of T-1 Recipient to request derivative status and I-192 Application for Advance Permission to Enter as Nonimmigrant. Doc. 1 at 1 ¶ 1. The I-914A Application was received by USCIS on May 28, 2024, and remains pending. *Id.* at 27-30 (I-914A Application Receipt). If accepted, Cortez-Gonzalez would gain legal status. *See generally Victims of Human Trafficking: T Nonimmigrant Status*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/humanitarian/victims-of-human-trafficking-t-nonimmigrant-status [https://perma.cc/LN9L-BTEP] (last updated May 16, 2025). But, to remain eligible for the T visa, Cortez-Gonzalez must remain physically present in the United States. *See* § 1101(a)(15)(T)(i)(II); 8 C.F.R. § 214.207(a)-(b). Removing her from the country prior to resolution of her application would therefore have profound consequences.

to grant a bond." Doc. 1 at 32-33 (Otero Immigration Court Order); Doc. 2 at 8 ¶ 6. Cortez-Gonzalez appealed the IJ's bond denial to the Board of Immigration Appeals ("BIA"). Doc. 1 at 6 ¶ 25; *see also id.* at 38-44 (Appeal to BIA). The BIA has not ruled on Cortez-Gonzalez's appeal, but the prospects of a favorable outcome are bleak. The BIA recently issued a precedential decision holding that section 235(b)(2)(A) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1225(b)(2)(A), precludes IJs from granting bond requests to people who are present in the United States unlawfully.[2] *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). With no other options available to her, Cortez-Gonzalez now seeks relief from this Court. Doc. 1.[3]

## PROCEDURAL BACKGROUND

Cortez-Gonzalez filed a Petition for Writ of Habeas Corpus ("Petition") on October 9, 2025. Doc. 1. She asserts that she is being held unlawfully at the Otero County Processing Center and that her continued detention violates her Fifth Amendment right to due process, the Administrative Procedure Act ("APA"), her Fourth Amendment right to a neutral judicial determination of probable cause, and the *Accardi* Doctrine with respect to 8 C.F.R. §

---

[2] Respondents urge the Court to adopt the BIA's decision and apply 8 U.S.C. § 1225 to Cortez-Gonzalez's pre-removal detention. *See* Doc. 15 at 9-10. This approach is novel and inconsistent with a host of case law interpreting the relevant statutes. *See Salazar v. Dedos*, No. 1:25-cv-00835-DHU-JMR, 2025 WL 2676729, at *4 (D.N.M. Sept. 17, 2025); *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-cv-01031-KG-JFR, 2025 WL 3187432 (D.N.M. Nov. 14, 2025); *see also Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1257-61 (W.D. Wash. 2025); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 483-91 (S.D.N.Y. 2025); *Jimenez v. FCI Berlin*, No. 25-cv-326-LM-AJ, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Cerritos Echevarria v. Bondi*, No. CV-25-03252-PHX-DWL (ESW), 2025 WL 2821282, at *4-5 (D. Ariz. Oct. 3, 2025) (collecting cases); *Ochoa Ochoa v. Noem*, No. 25-cv-10865, 2025 WL 2938779, at *5 n.8 (N.D. Ill. Oct. 16, 2025) (collecting cases).

[3] The Immigration Court originally scheduled Cortez-Gonzalez's individual hearing regarding her removal for February 2, 2026. Doc. 2 at 7. The hearing was rescheduled to October 21, 2025. *Id.* The IJ denied Cortez-Gonzalez's motion to continue on October 6, 2025. *Id.* As of the date of this Opinion, Cortez-Gonzalez's individual hearing was set for November 17, 2025. Doc. 15 at 3.

287.8(C)(2)(i) and (ii). *Id.* at 10-14 ¶¶ 40-61. Along with the Petition, Cortez-Gonzalez also filed

a Motion for Temporary Restraining Order ("Motion"). Doc. 2. She seeks various forms of relief,

including:

> (1) enjoin[ing] Respondents from transferring Petitioner outside of New Mexico
> while this matter is pending so as not [to] deprive this Court and Petitioner an
> opportunity to hear this case; (2) direct[ing] DHS to schedule a constitutionally
> adequate individualized custody determination within 10 days[,] at which the
> government bears the burden to justify continued detention and the Court considers
> release on bond or other reasonable conditions of supervision; (3) enjoin[ing] DHS
> from removing Petitioner while her application for a T visa remains pending; [and]
> (4) grant[ing] such other and further relief as law and justice require.

*See* Doc. 2 at 7-8 (citation modified).[4]

After receiving Cortez-Gonzalez's Motion, the Court issued an Order directing service on

Respondents. Doc. 5. Briefing was scheduled, and a hearing was held.[5] The Court subsequently

issued a Temporary Restraining Order ("TRO") enjoining Respondents from transferring Cortez-

Gonzalez to any facility outside of the District of New Mexico or from removing her from the

United States during the pendency of her habeas proceedings. Doc. 11. Further briefing was set to

allow the parties an opportunity to address Cortez-Gonzalez's remaining requests for relief. Doc.

12. Thereafter, the Court issued the Second TRO requiring Respondents to provide her with an

individualized bond hearing pursuant to 8 U.S.C. § 1226(a). Doc. 16. This Opinion provides the

legal reasoning for that decision.

## DISCUSSION

---

[4] Unlike the Petition, the Motion does not request Cortez-Gonzalez be released from custody. The
Motion requests the Court enjoin DHS from removing her while her T visa application is pending.
This relief is not requested in the Petition. *Compare* Doc. 1 at 14-15 ¶¶ 1-8, *with* Doc. 2 at 7-8.

[5] That Order was necessary because the Motion was absent of any statements certifying "efforts
made to give notice," as required by the Federal Rules of Civil Procedure. Fed. R. Civ. P.
65(b)(1)(B) (providing notice requirements for an ex parte temporary restraining order); Docs. 2,
5.

## I.    Applicable Legal Standard

To obtain a restraining order, the movant must show "(1) a substantial likelihood of success on the merits, (2) irreparable injury in the absence of the injunction, (3) its threatened injury outweighs the harm to the opposing party under the injunction, and (4) the injunction is not adverse to the public interest."[6] *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1139 n.2 (10th Cir. 2017) (citing *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009)). "The burden is on the movant, and 'the right to relief must be clear and unequivocal' due to the extraordinary nature of preliminary injunctions as a remedy." *N.S. v. Albuquerque Pub. Schs. Bd. of Educ.*, No. 1:24-cv-01303-MLG-GJF, 2025 WL 3215604, at *2 (D.N.M. Feb. 3, 2025) (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)). Further, because Cortez-Gonzalez's requested relief mandates action (rather than prohibiting it), she must clear a higher hurdle to prevail. *See Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019) (citing *Awad v Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012)). Specifically, she "must make a 'strong showing'" that the likelihood-of-success and balance-of-harms factors "tilt in her favor." *Id* (quoting *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016)).

## II.    Cortez-Gonzalez satisfies the four prerequisites justifying a preliminary injunction.

### A.    Cortez-Gonzalez is likely to succeed on the merits.

#### 1.    Cortez-Gonzalez's detention is governed by 8 U.S.C. § 1226(a).

---

[6] The standard applicable to a motion for a preliminary injunction is the same as a motion for a TRO. *See Valdez v. Grisham*, 559 F. Supp. 3d 1161, 1170 n.1 (D.N.M. 2021); *Nellson v. Barnhart*, 454 F. Supp. 3d 1087, 1091 (D. Colo. 2020) (citing *Wiechmann v. Ritter*, 44 F. App'x 346, 347 (10th Cir. 2002)). Case law addressing either situation may be properly considered. *See Valdez*, 599 F.Supp. at 1170; *Herrera v. Santa Fe Pub. Schs.*, 792 F.Supp.2d 1174, 1181-82 (D.N.M. 2011).

Cortez-Gonzalez claims her detention is governed by the discretionary detention authority of 8 U.S.C. § 1226(a) and, as such, she is entitled to an individualized bond hearing. Doc. 2 at 6-8, 13-20. Respondents assert Cortez-Gonzalez is appropriately classified and detained pursuant to § 1225(b)(2)(A). Doc. 15 at 9. Whether she is likely to succeed on her claims necessarily turns on which of these statutory provisions controls. For the reasons explained below, the Court finds (like nearly all other courts to consider the matter) that § 1226(a), not § 1225(b), applies to petitioners like Cortez-Gonzalez. *See supra* note 2.

Sections 1225 and 1226 govern the detention of noncitizens[7] prior to a final order of removal. *See Jennings v. Rodriguez*, 583 U.S. 281, 287-89 (2018). The first, §1225(b), "applies primarily to [noncitizens] seeking entry into the United States,"—i.e., "applicants for admission." *Jennings*, 583 U.S. at 297.[8] Detention, pursuant to § 1225 (b)(2)(A), is required "if the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted . . . ." "A noncitizen detained under Section 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' under 8 U.S.C. § 1182(d)(5)(A)." *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025) (quoting *Jennings*, 583 U.S. at 300).

By contrast, § 1226(a) sets the "default rule" for detaining noncitizens "already present in the United States." *Jennings*, 583 U.S. at 303. Under § 1226(a), a noncitizen "*may* be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States."

---

[7] The Court uses the term aliens and noncitizens interchangeably.

[8] Section 1225 defines an "applicant for admission" as a noncitizen "present in the United States who has not been admitted or who arrives in the United States . . . ." § 1225(a)(1). All applicants for admission must be inspected by an immigration officer. § 1225(a)(3).

(emphasis added). Noncitizens detained pursuant to § 1226(a) are therefore generally entitled to individualized bond hearings as described by federal regulation. *See Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Some limited exceptions exist, including those outlined in §1226(c). Generally speaking, those provisions apply to circumstances in which a noncitizen has "committed or been sentenced for certain criminal offenses, or because they are affiliated with terrorist groups or activities." *Gomes*, 2025 WL 1869299, at *2 (citing §§ 1226(c)(1)(A)-(D)). Earlier this year, the Laken Riley Act ("LRA") added additional criminal convictions triggering § 1226(c)'s custodial provisions, but none are applicable in this case. *See* Pub. L. No. 119-1, § 2, 139 Stat. 3 (2025) (codified as amended at § 1226(c)(1)(E)).[9] As explained above, Cortez-Gonzalez has no criminal history. *See supra* p.2.

Respondents argue Cortez-Gonzalez "falls squarely within the ambit of" § 1225(b)(2)(A) because she is an "applicant for admission." Doc. 15 at 9. The Court reads the statute differently. The reasons are numerous.

For starters, consider the relevant text. Section 1225(b)(2)(A)'s detention provision comes into effect only after several conditions have been satisfied: (1) an "examining immigration officer" (2) must conclude during an "inspection" (3) of an "applicant for admission" (4) who is "seeking admission" (5) that the individual "is not clearly and beyond a doubt entitled to be admitted[.]"*See also Jimenez*, 2025 WL 2639390, at *4. The active construction of "the phrase 'seeking admission' . . . necessarily implies some sort of present-tense action." *Martinez v. Hyde*,

---

[9] LRA amendments require the detention of noncitizens charged as inadmissible under Sections 1182(a)(6)(A) (the inadmissibility ground for a noncitizen 'present in the United States without being admitted or paroled'), 1182(a)(6)(C) (the inadmissibility ground for misrepresentation), or 1182(a)(7) (the inadmissibility ground for lacking valid documentation) *and* if the noncitizen has been arrested for, charged with, or convicted of certain crimes." *Rodriguez*, 779 F. Supp. 3d at 1246.

792 F. Supp. 3d 211, 218 (D. Mass. 2025). Noncitizens, like Cortez-Gonzalez, who reside in the country for decades are not "seeking admission". They are "no longer seeking to enter the United States (lawfully or otherwise)"—they are already here. *Jimenez*, 2025 WL 2639390, at *8. Indeed, the terms "admission" and "admitted" apply "with respect to [a noncitizen], the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer.'" *Id.* (alteration in original) (quoting § 1101(a)(13)(A)). To conclude that all "applicants for admission" are continuously "seeking admission" for as long as they live in the United States "is an obvious violation of the rule against surplusage." *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827, at *10 (D. Mass. Aug. 19, 2025). If all "applicants for admission" were "seeking admission" to the country, "there would be no need to include the phrase 'seeking admission' in the statute." *Lopez Benitez*, 2025 WL 2371588, at *6.

Further, Respondents take on the relevant statues at odds with the purposes underlying Congress's enactment of the LRA. Simply put, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless." *Maldonado v. Olson*, 795 F. Supp. 3d 1134 (D. Minn. 2025). The LRA would be rendered unnecessarily duplicative. Neither legal principles nor common sense support such a reading. *See Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1283 n.15 (10th Cir. 2017) ("The canon against surplusage indicates that [courts] generally must give effect to all statutory provisions, so that no part will be inoperative or superfluous— each phrase must have distinct meaning.").

Perhaps most significantly, the Court's interpretation of § 1225(b)(2) accords with the Supreme Court's holding in *Jennings*. 583 U.S. 281. There, the Supreme Court instructed that "U.S. immigration law authorizes the Government to detain certain [noncitizens] *seeking*

*admission* into the country under §§ 1225(b)(1) and (b)(2). It *also authorizes* the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* (emphases added). This interpretation of §§ 1225 and 1226 is consistent with the due process that must be afforded to noncitizens who have entered the United States. Once a noncitizen effects entry into the United States, the Due Process Clause applies "whether [the noncitizen's] presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Noncitizens who have not yet effected entry are not afforded the same privileges.[10] *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). The relevant statutes should be read consistent with these principles. And to that end, the Court finds that Congress plainly did not intend for § 1225(b)(2)(A) to apply to noncitizens already present in the United States. *See also Martinez*, 792 F. Supp. 3d at 222.

Finally, the Court notes that Respondents' take on the law is novel. Until July 2025, DHS interpreted and applied § 1226(a) to noncitizens already residing in the United States without admission or parole. *See Jimenez*, 2025 WL 2639390, at *9; *Martinez*, 792 F. Supp.3d at 217. From the time § 1226 was enacted as part of the Illegal Immigration Reform and Immigrant

---

[10] The Supreme Court in *Thuraissigiam* concluded that simply "set[ting] foot on U.S. soil" is insufficient to "effect[] an entry" and trigger due process protections. 591 U.S. 103, 139-40 (2020). The Court noted that noncitizens "who have established connections in this country have due process rights in deportation proceedings . . .'" *Id.* at 107. This is consistent with previous cases recognizing noncitizens who have "effected an entry" having due process rights. *See Zadvydas*, 533 U.S. at 693; *see also Pablo Sequen v. Albarran*, No. 25-cv-06487-PCP, 2025 WL 2935630, at *7 (N.D. Cal. Oct. 15, 2025) ("[I]f a noncitizen 'gain[s a] foothold in the United States,' . . . or 'begins to develop . . . ties' in this country, 'h[er] constitutional status changes accordingly,' and she 'has a right to due process.'") (alterations in original) (citations omitted) (first quoting *Kaplan v. Tod*, 267 U.S. 228, 230, (1925), the quoting *Landon v. Plasencia*, 459 U.S. 21, 32-33 (1982)). Noncitizens like Cortez-Gonzalez have, in fact, effected entry due to their connections and ties to this country. *See Pu Sacvin*, 2025 WL 3187432, at * 3 ("Mr. Pu Sacvin 'already effected an entry' into the United States by living here for decades." (citing *Hernandez v. Baltazar*, No. 1:25cv-03094-CNS, 2025 WL 2996643, at *5 (D. Colo. Oct. 24, 2025))).

Responsibility Act of 1996 ("IIRIRA") until this summer, "DHS took the position that, '[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination.'" *Jimenez*, 2025 WL 2639390, at *9 (alterations in original) (quoting 62 Fed. Reg. 10312-01, 10323 (Mar. 6, 1997)). "The government's failure, across multiple administrations, to assert that § 1225(b) gives it the power to detain without a bail hearing everyone who unlawfully entered the country is 'significant in determining whether such power was actually conferred.'" *Id.* (quoting *West Virginia v. EPA*, 597 U.S. 697, 725 (2022)). As other courts have noted, "'[T]he longstanding practice of the government—like any other interpretive aid—can inform [a court's] determination of what the law is,'" and "[r]espect for Executive Branch interpretations of federal statutes is 'especially warranted when [it] was issued roughly contemporaneously with enactment of the statute and remained consistent over time.'" *Rodriguez*, 779 F. Supp. 3d at 1260 ((quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024)). So, while not dispositive, the Court finds DHS's prior decades-long practice persuasive.

For the foregoing reasons, the Court concludes Cortez-Gonzalez has made a strong showing that her detention is governed by § 1226(a). *See* Doc. 2 at 13-20.

### 2.    *Matter of Yajure Hurtado*

Respondents rely heavily on the BIA's September 5, 2025, decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), for their position that Cortez-Gonzalez's detention is subject to § 1225(b)(2)(A). Doc. 15 at 4-5, 9-10. This Court is not bound by the BIA's interpretation of the relevant statutes—particularly when the result lacks sound legal foundation. *See Loper Bright Enters.*, 603 U.S. at 413; *see also Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025) (discussing how the *Yajure Hurtado* decision does not

entitle deference because it contradicts prior BIA decisions and "conflicts with the implementing regulation for § 1225(b)" (quoting *Ortiz Donis v. Chestnut*, No. 1:25-cv-01228 JLT SAB, 2025 WL 2879514, at *8 (E.D. Cal. Oct. 9, 2025))). Accordingly, for the reasons previously explained in this Opinion, the Court is not persuaded by the BIA's analysis and declines to follow it. *See also Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *6 (E.D. Mich. Sept. 9, 2025); *Buenrostro-Mendez v. Bondi*, No. H-25-3726, 2025 WL 2886346, at *3 n.3 (S.D. Tex. Oct. 7, 2025) (collecting cases ruling similarly).

### 3.     Cortez-Gonzalez's Fifth Amendment Claim

The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993); *see also Zadvydas*, 533 U.S. at 693. Given that § 1226(a) is controlling, Cortez-Gonzalez is entitled—as a right—to an individualized bond hearing. *See Salazar*, 2025 WL 2676729, at *5. Cortez-Gonzalez's continued detention without such review constitutes an ongoing violation of her right to due process. *Id.* Cortez-Gonzalez therefore meets her burden in demonstrating a strong showing of the likely success on the merits of her Fifth Amendment Claim.[11]

### B.  Irreparable Harm

---

[11] Because Cortez-Gonzalez met her burden as to her Fifth Amendment Claim, the Court need not address the likelihood of success of her other claims at this time. Furthermore, Cortez-Gonzalez's Fourth Amendment and *Accardi* doctrine claims are irrelevant, as she did not request a TRO requiring her release in her Motion for injunctive relief. *See* Doc. 2 at 7-8.

To demonstrate irreparable harm, Cortez-Gonzalez must show that she "stand[s] to suffer 'an injury' that is 'certain, great, actual, and not theoretical.'" *Valdez*, 559 F. Supp. 3d at 1181-82 (quoting *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005)). "'Merely serious or substantial harm is not irreparable harm.'" *Id.* (quoting *Schrier*, 427 F.3d at 1267). "What makes an injury 'irreparable' is the inadequacy of, and the difficulty of calculating, a monetary remedy after a full trial." *Free the Nipple-Fort Collins,* 916 F.3d at 806 (citing *Awad*, 670 F.3d at 1131). "Any deprivation of any constitutional right fits that bill." *Id.*

Absent the Court's Order requiring Respondents provide a bond hearing, Cortez-Gonzalez will continue to be denied her Fifth Amendment due process rights that she is entitled to under § 1226(a). It also appears that Cortez-Gonzalez is likely to be granted conditional release if afforded a bond hearing because she has no criminal history and does not seem to be a flight risk given her pending T visa application and her engagement to a U.S. citizen. Doc. 2 at 8-9 ¶¶ 3, 11; *Rodriguez*, 779 F. Supp. 3d at 1262 (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 for the proposition that "an IJ will order a detainee released on bond if the person is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk'")). The Court therefore concludes Cortez-Gonzalez suffers irreparable harm every day that she remains in custody without a hearing, which would likely result in her release from detention. *See Rodriguez*, 779 F. Supp. 3d at 1261-62.

## C.  Balance of the Equities and the Public Interest

Upon consideration of the record, the Court finds that the equities weigh in favor of injunctive relief and that granting the limited relief of a bond hearing is in the public interest. Predictably, Respondents offer no counterargument to this factor of the TRO analysis. *See* Doc. 15. Respondents' detention of Cortez-Gonzalez in New Mexico has separated her from her family

in California and placed a person without a criminal history in a custodial setting. Doc. 2 at 6. Further, Cortez-Gonzalez will almost certainly be released if afforded a bond hearing. *See supra* Section II.B. Whatever (unstated) interest Respondents may have in detaining Cortez-Gonzalez, it is outweighed by the "'substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations.'" *Gamez Lira v. Noem*, No. 1:25-cv-00855-WJ-KK, 2025 WL 2581710, at *4 (D.N.M. Sept. 5, 2025) (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Accordingly, the Court concludes it is likely that Cortez-Gonzalez's detention should be governed by § 1226(a)—neither equity nor the public's interest are furthered by detaining Cortez-Gonzalez without an individualized bond hearing. This factor supports granting injunctive relief.

## CONCLUSION

For the foregoing reasons, the Court entered a second temporary restraining order on October 24, 2025, requiring Respondents provide Cortez-Gonzalez an individualized bond hearing pursuant to § 1226(a) within seven days of the Order. Doc. 16.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA

13